UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | |
|---|---|
| **CONNIE DOWNS,** | **CIVIL ACTION NO. 5:15-cv-24-KKC** |
|     **Plaintiff,** | |
| **V.** | **OPINION AND ORDER** |
| **CAROLYN W. COLVIN, Acting Commissioner of Social Security,** | |
|     **Defendant.** | |

\*\*\* \*\*\* \*\*\*

This matter is before the Court for consideration of cross-motions for summary judgment. [DE 11; 13]. The Claimant, Connie Downs, brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial relief from an administrative decision of the Commissioner of Social Security denying her claim for Social Security Disability Insurance Benefits ("DIB"). The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence and was decided by the proper legal standards.

## I. OVERVIEW OF THE PROCESS

In determining whether a claimant has a compensable disability under the Social Security Act, the regulations provide a five-step sequential process which the administrative law judge ("ALJ") must follow. 20 C.F.R. § 404.1520(a)(4); *see also Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 652 (6th Cir. 2009) (describing the administrative process). The five steps, in summary, are as follows:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her

> physical or mental ability to do basic work activities—the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers*, 582 F.3d at 652 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 404.1520(b)–(g)).

The claimant bears the burden of proof through the first four steps of the analysis; but if the ALJ reaches the fifth step without finding the claimant disabled, then the burden shifts to the Commissioner. *Longworth v. Comm'r Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005). The Commissioner satisfies the burden of proof at the fifth step by finding that the claimant is qualified for—and capable of performing—jobs that are available in the national economy and may rely upon the testimony of a vocational expert ("VE") regarding the range of potential jobs. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423, 425 (6th Cir. 2008).

## II. PROCEDURAL BACKGROUND AND THE ADMINISTRATIVE DECISION

Connie Downs ("Claimant") filed her claim for DIB on June 17, 2011, alleging an onset date of June 13, 2010. [TR 210]. The agency denied her application initially and upon reconsideration. [TR 121-124, 127-129]. Claimant requested review by an ALJ, and a hearing was held on August 7, 2013. [TR 46–94]. The ALJ subsequently issued an unfavorable decision on September 16, 2013. [TR 30–40].

At the time the ALJ's decision was rendered, Claimant was 47 years old. [TR 39]. Claimant left school after completing ninth grade and has past relevant work as a retail

2

stocker and office cleaner. [TR 52, 85-86]. She alleges disability due to fibromyalgia and arthritis. [DE 12 at 2.] Claimant's insured status expired on December 31, 2015. [TR 35].

First, the ALJ determined that Claimant has not engaged in substantial gainful activity since her alleged onset date of June 13, 2010. [TR 35]. Second, the ALJ found that Claimant suffers from the following severe impairments: neck pain, back pain, fibromyalgia, and morbid obesity. [TR 35]. Third, the ALJ determined that Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. [TR 37].

Next, the ALJ reviewed the record to determine Claimant's residual functional capacity ("RFC"). RFC assesses a claimant's maximum remaining capacity to perform work-related activities despite the physical and mental limitations caused by the claimant's disability. 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). In finding Claimant's RFC, the ALJ considered all symptoms in light of the objective medical evidence and other relevant evidence, including the following: (i) daily activities; (ii) location, duration, frequency, and intensity of symptoms; (iii) precipitating and aggravating factors; (iv) type, dosage, effectiveness, and side effects of any medication; (v) additional treatment; (vi) additional measures used to relieve symptoms; and (vii) other factors concerning functional limitations and restrictions due to symptoms. 20 C.F.R. § 404.1529. After reviewing all of the evidence, the ALJ determined that Claimant has the following RFC:

> [C]laimant has the residual functional capacity for a limited range of light work. She can lift and carry 20 pounds occasionally and ten pounds frequently, stand and walk six hours out of eight and sit six hours out of eight. She has limits on pushing and pulling with the bilateral lower extremities. She cannot climb ropes, ladders or scaffolds but is occasionally able to climb ramps and stairs. She can occasionally balance, kneel, crouch and crawl and can frequently stoop but has limits

3

> on exposure to extreme cold, full body vibration, concentrated humidity, and wetness.

[TR 38].After establishing Claimant's RFC, the ALJ continued to the fourth step. The ALJ asked the VE whether a hypothetical individual with Claimant's vocational factors and RFC could work as a retail stocker or office cleaner. [TR 87]. The VE testified that this hypothetical individual would be able to perform past relevant work as an office cleaner in the manner described by Claimant during the hearing. [TR 87] ("She would be able to do it as performed."). Therefore, the ALJ found Claimant not disabled. [TR 39-40.]

The ALJ also asked the VE if the hypothetical individual could make an adjustment to other work and the VE stated that this hypothetical individual could other unskilled entry level jobs, including cashier and housekeeper. [TR 87-88]. The ALJ also noted this in his decision. [TR 39.]

On October 23, 2012, Claimant participated in a Functional Capacity Evaluation. [TR 315.] Claimant submitted the results of the FCE to the Appeals Commission along with her request for review. The Appeals Commissions informed Claimant that it reviewed the FCE results, but stated: "The Administrative Law Judge decided your case through September 16, 2013. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before September 16, 2013." [TR 2.] The ALJ's decision that Claimant is not disabled became the final decision of the Commissioner when the Appeals Commission denied Claimant's request for review on December 4, 2014. [TR 1-5]. Claimant has exhausted her administrative remedies and filed a timely action in this Court. This case is now ripe for review under 42 U.S.C. § 405(g).

**III. GENERAL STANDARD OF REVIEW**

The decision of the Commissioner must be affirmed unless the ALJ applied the incorrect legal standards or the ALJ's findings are not supported by substantial evidence. *Lindsley v. Comm. of Soc. Sec.*, 560 F.3d 601, 604 (6th Cir. 2009). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In reviewing the decision of the Commissioner, courts should not conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See Lindsley*, 560 F.3d at 604–05. Courts must look at the record as a whole, and "[t]he court 'may not focus and base [its] decision entirely on a single piece of evidence, and disregard other pertinent evidence.'" *Sias v. Sec. of H.H.S.*, 861 F.2d 475, 479 n.1 (6th Cir. 1988) (alteration in original) (quoting *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978)). Rather, courts must affirm the Commissioner's decision so long as it is supported by substantial evidence, even if the court may have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).

**IV. ANALYSIS**

On appeal, Claimant presents two issues for review. First, she argues that the ALJ failed to provide good reasons for discounting the opinions of her treating sources. Second, she argues that the October 23, 2013, Functional Capacity Evaluation is new and material evidence that necessitates remand to the ALJ for further consideration.

*1. The ALJ did not err in discounting the opinions of Dr. Jackson and Dr. Murphy.*

Claimant argues that Dr. Jackson and Dr. Murphy are treating sources, and that the ALJ erred by failing to provide good reasons for discounting their opinions. [DE 12 at 8-11.]

First, Dr. Murphy, Claimant's chiropractor, is not a treating source, so his opinion is not entitled to deference. A chiropractor is not an "acceptable medical source" and, therefore, cannot be a "treating source." 20 C.F.R. §§ 404.1502, 404.1513(a); SSR 06-3p, 2006 WL 2329939, at *2 ("Medical sources who are not 'acceptable medical sources,' such as ... chiropractors."); *Schmiedebusch v. Comm'r of Soc. Sec. Admin.*, 536 F. App'x 637, 648 (6th Cir. 2013) ("Chiropractors are not a listed medical source who can provide evidence to establish an impairment, *see* 20 C.F.R. § 404.1513, and ALJs are not required to give weight to a chiropractor's opinion."). Thus, contrary to Claimant's assertions, the ALJ did not err by not afford controlling weight to Dr. Murphy's opinion. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Even though his opinion was not entitled to deference, the ALJ still noted that Dr. Murphy's reports were "contrary to medical records which routinely characterize [Claimant's] neck as supple and otherwise normal on physical examinations," which is a good reason for discounting his opinion. [TR 35.]

Second, Dr. Jackson is a treating source. However, the ALJ provided good reasons for discounting his opinion.

Dr. Jackson opined that Ms. Downs can sit for one-half, stand for one-third, and walk for one-quarter of an eight hour day with positional changes every five to ten minutes. [TR 447.] He further stated that Claimant can occasionally lift 20 pounds, lift and carry 5 pounds frequently, and bend occasionally, but can never squat, crawl, climb, or reach above shoulder level. [TR 448.] He stated she can drive a vehicle for 30 to 40 minutes maximum. [TR 449.]

An ALJ is required to "evaluate every medical opinion" in the record. *See* 20 C.F.R. § 404.1527(d). Not all medical opinions, however, are treated equally. The opinions of treating physicians, "medical professionals most able to provide a detailed, longitudinal

6

picture," are *generally* afforded the greatest deference. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting 20 C.F.R. § 404.1527(d)(2)). But "[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record." *Blakley*, 581 F.3d at 406 (quoting SSR 96-2p, 1996 WL 374188 (July 2, 1996)). The ALJ can reject the opinion of a treating physician "if good reasons are identified for not accepting it." *Bogle v. Sullivan*, 998 F.2d 342, 348 (6th Cir. 1993); *see also Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 652 (6th Cir. 2006) (en banc) (holding that an ALJ may reject the opinion of a treating physician if the treating physician's opinion is divorced from supporting objective evidence).

In this case, the ALJ gave Dr. Jackson's opinion "little to no weight." [TR 36.] Substantial evidence supports the ALJ's decision to discount Dr. Jackson's opinion. The ALJ explained that Dr. Jackson's opinion – like Dr. Murphy's opinion – was largely based on Claimant's own subjective statements and the limitations he stated were inconsistent with the routine, conservative nature of the actual treatment Claimant received. [TR 38-39.] These are both valid reasons for discounting a physician's opinion. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 391 (6th Cir. 2004) (concluding that substantial evidence supported the ALJ's rejection of a treating physician's medical opinion where it appeared "to be based not upon his own medical conclusion, but upon [the claimant's] own assessment of his … limitations."); *Helm v. Comm'r of Soc. Sec. Admin.*, 405 F. App'x 997, 1001 (6th Cir. 2011) ("conservative treatment history" and "modest treatment regimen" were good reasons for discounting physician's opinion.).

In addition, the ALJ explained that there was no support in the overall record for Dr. Jackson's "extremely limiting assessment." [TR 36.] The Sixth Circuit has instructed that

7

"[w]here the opinion of a treating physician is not supported by objective evidence or is inconsistent with the other medical evidence in the record, [it] generally will uphold an ALJ's decision to discount that opinion." *Price v. Comm'r Soc. Sec. Admin.*, 342 F. App'x 172, 175-76 (6th Cir. 2009).The ALJ further noted that Dr. Jackson's assessment was inconsistent with his own treatment notes. [TR 36.] ("There is no support for the extremely limiting assessment completed at Ms. Down's request and the disabling limitations are questionable when compared to the overall record, much less Dr. Jackson's own treatment notes."). The ALJ observed that a June 2010 lumbar spine film ordered by Dr. Jackson was unremarkable, that Dr. Jackson noted that straight leg raising bothers the claimant but did not report positive straight leg raising, and that an August 2011 medical report completed by Dr. Jackson emphasized Claimant's longstanding weight battle but did not include any abnormal physical findings. [TR 36.] An ALJ may find that a doctor is less credible where the doctor's own assessments are inconsistent. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 652 (6th Cir. 2006) (en banc).

The ALJ articulated valid grounds for discounting Dr. Jackson's opinion, so his decision was supported by substantial evidence. "Even if this Court might have reached a contrary conclusion of fact, the Commissioner's decision must be affirmed so long as it is supported by substantial evidence." *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854-55 (6th Cir. 2010).

*2. Claimant has not shown good cause for failing to acquire and present the FCE prior to the ALJ's decision.*

After the ALJ's September 16, 2013, decision, Claimant participated in a Functional Capacity Evaluation (FCE) on October 23, 2013. [TR 315.] The Appeals Council considered the results of the FCE, but determined that it did not affect the ALJ's decision. [TR 2.]

Claimant now argues that the FCE is new and material evidence that warrants remand for additional consideration. [DE 12 at 11-14.]

A district court may remand a case for further administrative proceedings in light of new evidence "if a claimant shows that the evidence is new and material, and that there was good cause for not presenting it in the prior proceeding." *Cline v. Comm'r of Soc. Sec.,* 96 F.3d 146, 148 (6th Cir. 1996). "A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).

In this case, Claimant has failed to demonstrate good cause for not acquiring and presenting the FCE in the prior proceedings before the ALJ. Regarding good cause, Claimant asserts the following:

> As for the issue of good cause, this report was not provided to the ALJ prior to his decision only because it was performed 37 days later. Because Ms. Downs did not have access to this report prior to the ALJ's decision, but did timely submit the assessment as soon as it was received, the issue of "good cause" is moot.

[DE 12 at 14.]

Claimant does not offer any justification for failing to undergo the FCE prior to the ALJ's decision. The fact that the FCE was performed thirty seven days after the ALJ's decision is the reason it was not presented to the ALJ, but does not explain why Claimant could not obtain the FCE at an earlier time. The issue of good cause is not moot simply because Claimant promptly submitted the results once she obtained them. If good cause were not a requirement, every claimant who received an unfavorable ALJ opinion could obtain additional medical examinations and seek remand based on new evidence. Here, Claimant has not established good cause for failing to acquire this evidence in time to

9

present it to the ALJ. Therefore, remand for further consideration of the FCE is not appropriate.

## V. CONCLUSION

For the reasons set forth above, the Court hereby **ORDERS** as follows:

1. Plaintiff's motion for summary judgment [DE 11] is **DENIED**;

2. The Commissioner's motion for summary judgment [DE 13] is **GRANTED**;

3. The decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g) as it was supported by substantial evidence and was decided by proper legal standards; and

4. A judgment consistent with this Opinion & Order will be entered contemporaneously.

Dated March 31, 2016.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY